Joseph A. BOLDEN, Jr., et al., Plaintiffs,

v.

Paul F. PEGELOW et al., Defendants.

Civ. A. Nos. 2754–M, 2760, 2761, 2771–M.

United States District Court
E. D. Virginia,
Alexandria Division.

May 27, 1963.

Stanford E. Parris, Alexandria, Va., for plaintiff Bolden.

Karl G. Sorg, Arlington, Va., for plaintiff Smith.

Otto L. Tucker, Alexandria, Va., for plaintiffs Watson and Sewell.

Plato Cacheris, First Asst. U. S. Atty., Alexandria, Va., Chester H. Gray, Corp. Counsel, District of Columbia, Washington, D. C., for defendants.

LEWIS, District Judge.

The plaintiffs, prisoners residing in the District of Columbia Reformatory at Lorton, Virginia, filed separate suits against Donald E. Clemmer, Paul F. Pegelow, and other officials of the Lorton Reformatory, alleging deprivation of their civil rights.

Leave was granted to proceed in forma pauperis, and Court-appointed counsel were assigned to represent the respective plaintiffs. The cases were consolidated and an ore tenus hearing was held on all issues raised in the pleadings.

Joseph X. Watson and Theodore X. Sewell are Muslims. They contend they had been persecuted and punished for attempting to practice their religious beliefs. The respondents answered, witnesses were interviewed and summonsed, and these plaintiffs were given every opportunity to substantiate their allegations in this proceeding. They refused, without justifiable excuse, to attend Court in person on the day set, and requested their Court-appointed counsel to move for dismissal of their respective complaints. The motions were granted and Civil Actions No. 2771-M and No. 2760-M were dismissed with prejudice.

Watson and Sewell were brought up from Lorton later that day under subpoena to testify as witnesses for Eddie W. X. Smith.

Smith complains of inadequate study hours, broken typewriters, unavailability of needed law books (some with missing pages), limited mailing privileges, censored mail, and time consumed in getting legal papers notarized (he says they must first be approved), all of which affects his rights in timely filing legal papers with the courts.

Bolden complains about the segregation of the prisoner barbershop facilities. He says the hospital and officers' barber facilities are integrated, and claims discrimination under the Fourteenth Amendment and non-compliance with the policy order of the District of Columbia Government regulating non-discrimination.

The evidence thus received discloses that prisoners, upon request, are permitted to use the available study halls, legal books, typewriters, and other dormitories for study and preparation of legal documents, on a non-discriminatory basis. They receive free timely notary service and are accorded unlimited mailing privileges to the courts. (Legal papers are hand-carried to the District of Columbia courts.) Other mail is limited to those on the approved mailing list,

All mail, outgoing and incoming, except from and to the courts, is spot-censored. Legal papers are read, one copy is retained for the administrative records, and the other copies are forwarded as written to the designated courts. There is no discrimination or unreasonable delay in the rendering of any of these services.

The prisoners' barber shops are segregated, except in the trainee section where colored barbers are permitted to shave or cut the hair of white men with their consent. The white barber shop is adjacent to the colored barber shop. Each is staffed with barbers of their own race. (A colored barber was placed in the white barber shop after this suit was filed.) Prisoners are brought to the barber shop by work squads. The white prisoners use the white shop and the colored use the colored shop. All other facilities at the Lorton Reformatory, including the hospital and officers' barber shops, are integrated, with the exception of eighteen all-colored, and one all-white, dormitories (there are three integrated dormitories).

The pertinent portion of the policy order of the District of Columbia Government regarding non-discrimination applicable to the Department of Corrections, as amended July 17, 1962, is as follows:

"3. *Non-discrimination in use of facilities and services.*

(a) *Policy.* Every official and employee under the supervision of the District Commissioners in any department, agency, or instrumentality, or any of its constituent units subject to this order shall act without regard to race, religion, color, ancestry, or national origin in all matters relating to the use and enjoyment of, or assignment or entitlement to, any public facility, accommodation, service or treatment subject to his control, authority, or supervision unless specifically required by statute to do otherwise.

(b) *Complaints of violation.* Any person who has been aggrieved because the policy of this section has not been adhered to may, within ten days, file with the Secretary of the Board of Commissioners, and with the Commissioners' Council on Human relations, a written statement of the facts of the matter. The Commissioners will thereafter cause an investigation to be made and, in the event that the complaint is justified, will take appropriate action."

The prisoner here complaining did not file a complaint of violation as provided for in subparagraph (b) above.

Upon this record, Smith has failed to establish discrimination in the use of any of the services complained of. Bolden has shown that colored inmates are taken to the barber shop staffed by colored barbers and that white inmates are taken to the barber shop staffed by white barbers. He has failed to establish discrimination.

Both heavily rely for legal support upon Sewell v. Pegelow, 291 F.2d 196, recently decided by the Court of Appeals for the Fourth Circuit, wherein it was held " * * * incarcerat[ion] in a penitentiary * * * does not deprive [a prisoner of] the right to invoke the provisions of the Civil Rights Act, since that Act applies to any person within the jurisdiction of the United States." Although that case did not adjudicate the extent of the prisoner's rights thus referred to, there can be no question that the "rights" thus mentioned are limited to those secured by the Federal Constitution and laws made pursuant thereto.

The rights here claimed do not fall within this classification.

■ A prisoner does not have a federally protected right to the unlimited use of an extensive law library, or notary service at will. Neither does he have the right to the unfettered use of the mails during confinement.

Smith was extended the same privilege of using the available study and library facilities at Lorton, accorded all other inmates, absent discrimination on account of color or race. He was entitled to no more. His claim of inadequate notary service and censoring of his mail is without merit.

■ The claimed delay, if any, in the mailing of his legal papers, was self-imposed by the time consumed in preparing his notice of appeal. Delay alone is not enough to warrant judicial relief. Frustration is the yardstick, referred to in Spires v. Dowd, 7 Cir., 271 F.2d 659. There the frustration was an order of the warden prohibiting the prisoner from mailing legal papers to a state court.

Here the Superintendent promptly mailed all legal papers when and as received, and hand-carried those directed to the District of Columbia courts.

Smith's petition will be Dismissed.

Bolden seeks herein a Court order requiring the prison officials of the District of Columbia Reformatory at Lorton to integrate the prisoners' barber shop. Such an order will not be entered.

Prison officials are vested with wide discretion in safeguarding prisoners committed to their custody. Superintendent Pegelow and the other prison officials of Lorton are of the opinion the rules and regulations now in effect for the use of the prisoners' barber shop are necessary for the safekeeping of the inmates, and this Court will not interfere with that decision.

■ Bolden has no constitutional right to the use of either a white or colored barber shop. Neither white nor colored inmates at Lorton are allowed to select the barber or the shop, and Bolden is no exception. His claim of discrimination on account of race is without merit and his petition for injunction will be Denied.

■ Bolden next contends the defendants are in violation of the policy order of the District of Columbia Government regarding non-discrimination. He admits he has not complied with paragraph

3, subsection (b), by filing a written complaint with the Secretary of the Board of Commissioners and the Commissioners' Council on Human Relations, and offers no satisfactory reason for failing to so do. Bolden must exhaust this reasonable administrative procedure before seeking the intervention of this Court. This he has not done, and his petition will be Dismissed.

The violation of the policy order in question, being continuous, may be referred to the attention of the Commissioners of the District of Columbia, if the prisoner be so advised.