**UNITED STATES of America ex rel. John M. FERENC**

v.

**Joseph R. BRIERLEY, Supt.**

**Civ. A. No. 70–1582.**

United States District Court, E. D. Pennsylvania.

Dec. 18, 1970.

John M. Ferenc, pro se.

Stewart J. Greenleaf, Asst. Dist. Atty., Norristown, Pa., for respondents.

### MEMORANDUM AND ORDER

JOHN W. LORD, Jr., Chief Judge.

Relator, John M. Ferenc, who is presently a prisoner in a state penitentiary, has filed the present petition for habeas corpus relief from a 1969 conviction for burglary and larceny (Bill of Indictment No. 1989, January Term, 1969). Relator received sentences of concurrent terms of 4–10 and 1–3 years upon conviction of these charges by a jury in the Court of Common Pleas of Montgomery County.

On September 25, 1970, this Court granted an evidentiary hearing solely on the question of whether or not the refusal of the Commonwealth to return to relator certain sums of money "not alleged by the Commonwealth to be involved in the offense charged, and which was eventually returned to him after the trial, thereby allegedly preventing him from hiring private counsel, effectively deprived him of the right to counsel." The hearing was held on November 2, 1970, following which the Commonwealth and relator submitted further briefs to the Court. For the reasons set forth below, we grant relator's petition.

Relator was arrested on November 26, 1968. Using the sums given by the Commonwealth, which are disputed as too low by relator, but which are most favorable to the Commonwealth, approximately $717.42 was found in relator's automobile. Approximately $150.00 was alleged to have been stolen. Quoting

from the Commonwealth's brief, "Sergeant Volp [sic] after arresting petitioner put out a national bulletin describing the money (approximately $567.42) found in the petitioner's automobile. * * * [N]o responses were received concerning the balance of the money."

At all relevant stages of the proceedings the learned trial judge offered to appoint a competent member of the Voluntary Defender's staff to represent relator. Relator refused each offer of such appointment, and, from the record, made a knowing and willing determination to conduct his own defense.[1] Normally, the Court would have no difficulty in holding that he had thereby precluded himself from alleging a denial of counsel. Here, however, running through the pages of the notes of testimony, accompanying his refusals of court-appointed counsel, was relator's claim that he was entitled to retain counsel with his withheld funds.

While the Commonwealth has never raised this point in its briefs, it should be noted that the trial judge offered to delay the trial until a hearing could be had on the return of relator's money. Relator refused to accept the responsibility for a delay, and, following a lengthy exchange during which relator refused to ask for a delay, the court marked the case for trial.[2]

In United States of America ex rel. Durocher v. La Vallee, 330 F.2d 303 (2nd Cir. 1964), the court heard four cases dealing with various aspects of the right to counsel. In the companion case of United States of America ex rel. Ripple v. Murphy, *Id.*, the court was confronted with a prisoner who alleged that he had been denied access to counsel of his choice. "And in the application which he submitted to the District Judge for a certificate of probable cause, Ripple further maintained that he was 'not financially unable to retain counsel,' but instead asserted that he was 'denied the opportunity to do so'. In effect, therefore, Ripple was not claiming a denial of his right to court-appointed counsel, but a denial of the opportunity to secure private counsel of his own choosing." *Id.* at 306. The Court remanded the case for a District Court hearing on the habeas corpus petition " * * * as implemented by the more specific allegations contained in [his] application for a certificate." *Id.* at 307.

---

1. Relator requested the trial judge to appoint counsel to serve only in an advisory capacity, which he refused to do. In his opinion the trial judge cited sufficient authority to justify his refusal. However, following this refusal, relator renewed his claims concerning his right to his money.

2. Quoting from the Notes of Testimony:
THE COURT: Then you wish to proceed to trial even though that petition [i. e., the money] has not been decided, is that correct?
MR. FERENC: Your Honor * * * I will not ask for a delay.
THE COURT: Would you just give me a yes or no answer, do you want it delayed or do you want to proceed to trial?
MR. FERENC: Your Honor, I'm prepared to defend myself against the Commonwealth, as I said, it is my opinion that it is legally impossible for the Commonwealth to try this case. If they are going to try it I am prepared to defend myself.

THE COURT: Well, do you want us to wait until the petition is determined?
MR. FERENC: Your Honor, I must say again I've realized what you are saying. but I will not commit myself by saying that I am ready for trial.
THE COURT: I think maybe the best thing to do would be to continue this trial and decide the disposition of the $2000 first. [Relator alleges that substantial amounts of money have been taken from him since his arrest, including part of the $2000 mentioned. We deal here only with the sums actually stated by the Commonwealth to have been found on relator, and which are, again, the sums most favorable to the Commonwealth.]
MR. FERENC: Is your Honor assuming the burden of this delay? I'll not assume it.
THE COURT: I guess I have to assume the responsibility for every decision I make, Mr. Ferenc.
Notes of Testimony, pp. 12–14.

■ It is well established that where a defendant is able to retain counsel of his own choice, he must be given a reasonable opportunity to do so. "It is a fundamental principle that an accused be permitted to choose his own counsel, the practice of assigning counsel being reserved for cases where the accused cannot or does not select his own." Lee v. United States, 98 U.S.App.D.C. 272, 274, 235 F.2d 219, 221 (1956). The right of an accused to counsel for his defense, secured in state prosecutions by the Fourteenth Amendment guarantee of due process, includes not only the right to have an attorney appointed by the state where necessary, but also the right of an accused to retain counsel of his own choosing. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Cooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L. Ed.2d 1448 (1958). Here, relator would have been able to retain counsel of his own choosing had his money been returned to him.[3]

■ The Commonwealth, in its brief contra relator's petition, presents three major objections to the granting of the writ. The first is that, with regard to relator's failure to testify on his own behalf at his evidentiary hearing, "The petitioner has failed to meet his burden through his own inaction." As authority for this assertion, it cites Bolden v. Pegelow, 218 F.Supp. 152 (E.D.Va. 1963); and Sewell v. Kennedy, United States Court of Appeals, 4th Cir., Memorandum Order, March 26, 1964, as standing for the proposition that " * * *

a petitioner in a habeas corpus hearing who refuses to appear at said hearing justifies a refusal." Relator here did not refuse to appear. He petitioned the Court, was present at the hearing, called witnesses, and cross-examined those of the Commonwealth. In the Bolden case two of the plaintiffs alleged discrimination in prison. Respondents answered, a hearing was scheduled, and, plaintiffs refused, " * * * without justifiable excuse, to attend Court on the day set, and requested their Court-appointed counsel to move for dismissal of their respective complaints. The motions were granted and * * * were dismissed with prejudice." Id. at 153. We fail to see the applicability of that set of facts to the instant case.

Second, and much more crucial to the question under consideration here, is this argument of the Commonwealth: "On September 29, 1969, the Commonwealth returned the balance of the petitioner's money less $318.60 which was used to pay the fine and costs imposed on his burglary conviction. The total amount returned to the petitioner amounted to approximately $248.82."[4]

"It is difficult to see how the retention of $248.82 for a reasonable period of time deprived the petitioner of the assistance of counsel, especially in light of the financial resources at the petitioner's disposal."[5]

The Commonwealth's argument is, therefore, that once the relator was convicted and fined, he did not have enough left to make a difference in whether or not he could retain counsel. This assumes that that amount of money used

---

3. The Montgomery Bar Association Minimum Fee Schedule, January 27, 1967, Norristown, Pa. P. 11, Criminal No. 3. Trial Fees (Preparation and/or Trial): b) Felonies * * * $500.00. This schedule of fees was in effect at the time of the trial.

4. The next paragraph of the Commonwealth's brief states: "The petitioner presently has approximately $5000 in his prison account. Certainly, the petitioner must have had access to substantial sums of money at the time of his trial. The

return to petitioner of $248.82 contributed very little to petitioner's present financial resources." Here the Commonwealth is taking the prisoner's present balance, much of which is a return on a cash bond from another jurisdiction, not available to him at the time of trial, and arguing that because it is available now, it must have been then. The record clearly shows that this was not the case.

5. Again, the financial resources at relator's disposal are not now the same as at the time of trial.

to pay the fine was *always* so earmarked by the Commonwealth, even *before* the trial, when it should have been available to retain counsel. Such an argument has no basis in law or logic.

The last of the Commonwealth's arguments against the issuing of the writ is that even if it was inappropriate for the Commonwealth to retain relator's money, any harm which he suffered thereby was "harmless error beyond a reasonable doubt." The basis for this argument is that the court-offered attorney was an "experienced and highly capable defense attorney." We are not here considering the question of his competence. We consider and decide, rather, that relator was entitled to counsel of his choice *because he could afford it,* no matter how well qualified court-appointed counsel may have been.

The Commonwealth contends that, "Unless our courts are prepared to hold that an attorney employed by the Public Defender's Office generally offers a criminal defendant inferior representation to a privately obtained counsel the inability of petitioner to employ private counsel was harmless error."

This is not the issue before us. Despite the allegations of relator that he was denied effective assistance of counsel, we treat here today *only* the question of his inability to use his own funds to retain his own counsel, a right clearly secured to him. The contributions of Voluntary Defender associations are too great to permit the effectiveness and dedication of their members to be called into question, and our opinion is not to be read as doing so.

### ORDER

And now, to wit, this 18th day of December, A.D. 1970, it is ordered that Relator John M. Ferenc's petition for writ of habeas corpus be and the same is hereby granted.

It is further ordered that the execution of the writ be stayed for a period of ten (10) days in order to permit the Commonwealth to appeal.

It is further ordered that if no appeal from this Order is taken within the said ten (10) day period the Commonwealth may obtain a further stay of the issuance of the writ and of relator's release from custody by signifying its intention to retry the relator and thereafter proceeding to do so within sixty (60) days, and by according the relator in the interim all of the rights of an untried prisoner, including the right to reasonable bail.

And it is so ordered.