[Crim. No. 6248. Third Dist. May 30, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID BOBBY DENA, Defendant and Appellant.

**COUNSEL**

Roy H. Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, and Jack R. Winkler, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**KONGSGAARD, J.**[*]—Defendant appeals from the judgment entered after the trial court's denial of his motion to withdraw his plea of guilty.

### Record

An information was filed on March 9, 1971, charging defendant with burglary, in violation of Penal Code section 459. On March 16, 1971, defendant entered a plea of not guilty to the crime of burglary as charged in the information. On April 1, 1971, defendant withdrew his plea of not guilty and entered a plea of guilty to second degree burglary. On April 15, 1971, prior to judgment, defendant moved to withdraw his guilty plea

[*]Assigned by the Chairman of the Judicial Council.

on the ground that material evidence favorable to defendant was willfully suppressed by the district attorney. This motion was denied after an evidentiary hearing. On the basis of his initial guilty plea, defendant was adjudged guilty of violation of Penal Code section 459 and was sentenced to state prison for the term prescribed by law.

Defendant filed notice of appeal from the judgment on April 16, 1971, and defendant's counsel filed a statement under Penal Code section 1237.5. A certificate of probable cause was refused by the trial judge.

On November 10, 1971, this court denied the People's motion to dismiss the appeal.

## Questions Presented

1. Failure to comply with Penal Code section 1237.5 (certificate of probable cause).

2. Suppression of evidence by the prosecution.

3. Inadequacy of counsel.

At the threshold we are confronted with a contention by the People that defendant's appeal is defective because there has not been compliance with section 1237.5 of the Penal Code. This section provides that an appeal cannot be taken from a judgment of conviction upon a plea of guilty unless (a) the defendant files with the trial court a statement showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings, and (b) the trial court executes and files a certificate of probable cause for such appeal. Defendant's counsel filed a statement alleging the plea of guilty was involuntary because it was induced by false information furnished to him by the district attorney. The trial court refused to grant a certificate of probable cause on the ground that such certificate was not necessary because the appeal was based upon alleged errors occurring after the entry of plea.

 The requirements of Penal Code section 1237.5 have been held inapplicable to an appeal from a conviction entered pursuant to a guilty plea where the defendant asserted errors in proceedings held subsequent to the plea. (*In re Harrell* (1970) 2 Cal.3d 675, 706 [87 Cal.Rptr. 504, 470 P.2d 640]; *People* v. *Delles* (1968) 69 Cal.2d 906, 909 [73 Cal.Rptr. 389, 447 P.2d 629]; *People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal. Rptr. 313, 426 P.2d 881]; *People* v. *Tracy* (1970) 12 Cal.App.3d 94, 102, fn. 2 [90 Cal.Rptr. 375]; *People* v. *Barteau* (1970) 10 Cal.App.3d 483, 486 [89 Cal.Rptr. 139].) On the other hand the rule is well established

that section 1237.5 must be satisfied where the challenge is to the validity of the plea itself rather than to some impropriety in post-plea proceedings. (*People* v. *Ribero* (1971) 4 Cal.3d 55 [92 Cal.Rptr. 692, 480 P.2d 308]; *People* v. *McMillan* (1971) 15 Cal.App.3d 576, 578 [93 Cal.Rptr. 296]; *People* v. *Moore* (1970) 5 Cal.App.3d 612, 616 [85 Cal.Rptr. 405]; *People* v. *Perez* (1968) 259 Cal.App.2d 371, 375 [66 Cal.Rptr. 473].)

In *Ribero, supra,* at pages 63-64, the court stated: "In determining the applicability of section 1237.5, the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made. The argument is made that since a motion to withdraw a guilty plea must of necessity be made after the plea, the ruling on the motion is a result of a 'subsequent adversary hearing'. . . . If a defendant challenges the validity of his plea by way of a motion to withdraw the plea, he cannot avoid the requirements of section 1237.5 by labelling the denial of the motion as an error in a proceeding subsequent to the plea. [Fn. omitted.] To hold otherwise would be to invite such motions as a matter of course, and would be wholly contrary to the purpose of section 1237.5. In the instant case, since petitioner is challenging the validity of his plea, he is required to comply with section 1237.5."

■ Even though the trial judge refused a certificate of probable cause in the case at bench he did in fact order and approve the transcripts on appeal. By doing so the trial court effectively certified defendant's case as a proper one for appeal. Under similar circumstances our Supreme Court in *People* v. *Herrera* (1967) 66 Cal.2d 664 [58 Cal.Rptr. 319, 426 P.2d 887], upheld defendant's right to press an appeal. In *Herrera*, the defendant executed a statement pursuant to section 1237.5 of the Penal Code, but the trial judge did not follow the requirements of the section, i.e., he did not file a certificate of probable cause nor did he deny it. Instead he approved the record on appeal. The court held: "By approving the transcript on appeal the trial judge *in effect* certified defendant's case for appeal. As a result, defendant, who had filed the required statement with the trial court, should not be penalized for the trial court's failure to file a certificate of probable cause." (*Id.* at p. 665.) (Original italics.)

The same result must follow in the case at bench. We hold that defendant's appeal has been properly certified.

### Factual Background

On February 6, 1971, at approximately 2:17 a.m., defendant was discovered inside the Farmers Market in Oroville with a bag full of "foodstuffs," and was arrested on a charge of burglary. It was the unanimous

opinion of the officers present that defendant had been drinking but was not intoxicated at the time of the arrest.

The Butte County Sheriff's office, as a matter of routine procedure in felony cases, causes a blood test to be taken of any person arrested as soon as possible after apprehension. Defendant was booked at 2:45 a.m., but his blood sample was not drawn until 3:30 a.m.

Attorney Raoul LeClerc was appointed to represent defendant and immediately commenced his trial preparation. Pursuant to the customary practice of the Butte County District Attorney's office, he received permission from a deputy district attorney to examine the district attorney's file and to make copies of those items which interested him. LeClerc received the blood alcohol analysis of defendant, indicating a blood alcohol level of .19 milligrams. To assist him in investigating the defense of diminished capacity, the trial court authorized LeClerc to employ a doctor to advise on the effect of a blood alcohol level of .19 milligrams on the defendant's ability to form the specific intent required in a charge of burglary.

The time that the blood sample was taken did not appear in the district attorney's file except for an indication it was after defendant was booked. LeClerc made further inquiries of the district attorney's office concerning the time the blood sample was taken. He was advised by the district attorney that the customary procedure was to draw the blood sample between time of arrest and time of booking (in this case between 2:17 a.m. and 2:45 a.m.), but that the exact time was not known.

After LeClerc received this information, he consulted with Dr. Wilfred Olson about the possibility of a defense of diminished capacity. Dr. Olson advised LeClerc that a blood alcohol level of .19 taken 15 minutes after his apprehension would not justify raising the defense of diminished capacity. After conferring with the doctor, LeClerc concluded his only defense had no merit and he advised defendant to change his plea to guilty.

On March 30, Deputy Sheriff Butler, having located the official record of the time of the blood-draw, gave the deputy district attorney a copy of the report which indicated defendant's blood sample had been taken between 3:22 and 3:40 a.m. on the date of the offense, rather than soon after defendant's arrest as originally reported. *At no time did the deputy district attorney convey this information to LeClerc.*

The scene now shifts to the courtroom where defendant and his counsel appeared on April 1 and requested leave to withdraw the prior plea of not guilty and enter a plea of guilty. The same deputy district attorney was present representing the People. At the hearing, the trial judge carefully

and painstakingly inquired of defendant and his counsel the reasons for the change of plea, advised defendant of his constitutional rights under *Boykin*,[1] made an inquiry as to the factual basis for the plea and specifically discussed the defense of diminished capacity with defendant's counsel. LeClerc advised the court that diminished capacity was an obvious defense he thoroughly considered and then abandoned after his medical advisor informed him the defense of diminished capacity to negate defendant's intent "just wasn't there."[2] The court permitted the change of plea.

Deputy Sheriff Tom Butler was present in court on April 1 and heard the colloquy between court and counsel when defendant changed his plea. Butler knew the statement by LeClerc to the court that the blood-draw was made approximately 15 minutes after the commission of the offense was in error. Butler immediately sent a note via the bailiff to the deputy district attorney advising him LeClerc's statement was in error in that the blood test was actually made an hour and 13 minutes after the offense. The deputy appeared to read the note, said nothing and put it in his brief case. Upon exiting the courtroom after the hearing, Butler asked the deputy district attorney about the discrepancy in the time the blood alcohol was taken, and was told "forget that you remembered that" or "forget that you figured that out."

Later the same day LeClerc was apprised of these circumstances by Deputy Sheriff Butler; consequently, LeClerc filed a motion to set aside the plea of guilty on the ground the prosecution willfully suppressed evidence that would have been favorable to the defendant.

In support of the motion to set aside the plea of guilty, LeClerc filed declarations of the defendant, Deputy Sheriff Butler, as well as his own. At the hearing on the motion on April 15, defendant produced Dr. Olson,

---

[1] *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

[2] "THE COURT: I see. And I assume, or Mr. LeClerc, is the court correct in assuming that you have explored all possible defenses in this matter? MR. LECLERC: Yes, Your Honor. The obvious defense is whether or not he was capable of forming an intent to commit theft when he entered the premises. And there was a blood alcohol test taken. And approximately fifteen minutes after his apprehension it was .19 blood alcohol or alcohol by weight. This information along with all the other information . . . were all taken into consideration by our medical expert who then advised me that he was unable to justify that the man, that there was any probability that the man was unable to form, and to not form an intent to, to commit theft. And, and so therefore we didn't see how he could be of any assistance in our defense. THE COURT: The theory of diminished capacity, responsibility then didn't seem to be available to you? MR. LECLERC: It's not, just not there for us to use Your Honor."

who testified about the significance of a particular blood alcohol level in relation to the time a blood sample had been drawn.

The prosecution filed no declarations in opposition to the affidavits of LeClerc and Butler, nor was any evidence offered by the prosecution that controverted the declarations filed in behalf of defendant. The deputy district attorney was present in court at the hearing but did not testify. Instead the prosecution produced four deputy sheriffs who participated in the arrest, the booking process, and the taking of the blood sample. The thrust of their testimony indicated the defendant appeared to have been drinking but was not intoxicated.

Based on this record, the trial judge denied the motion to set aside the plea of guilty.

### Suppression of Evidence

Penal Code section 1018 authorizes the trial court for good cause shown to permit the withdrawal of a plea of guilty and substitution of a plea of not guilty.[3] The statute expressly directs that it shall be construed liberally to promote justice. (See *People* v. *Francis* (1954) 42 Cal.2d 335, 338 [267 P.2d 8].) The motion is addressed to the sound discretion of the trial judge. As stated in *People* v. *Ottenstror* (1954) 127 Cal.App. 2d 104, 109 [273 P.2d 289]: "It is well settled in our law that an accused who seeks to set aside a plea of guilty must show good cause therefor, and the granting or denial of such an application rests in the sound discretion of the trial judge, and his decision will not be disturbed on appeal unless an abuse of that discretion is clearly shown. . . ."

In *People* v. *Griffin* (1950) 100 Cal.App.2d 546, 548 [224 P.2d 47], it is stated: "While a plea of guilty may be withdrawn for mistake, ignorance, inadvertence or for any other factor overreaching a defendant's free and clear judgment, the fact of such mistake, fraud, duress or overreaching may be established by clear and convincing evidence, . . ."

The court in *People* v. *Outcault* (1949) 90 Cal.App.2d 25, 30 [202 P.2d 602], declared: "This was the question before the trial court: Was the plea of guilty entered because of (a) duress, (b) fraud, (c) other forces

---

[3]Penal Code section 1018 states in pertinent part: ". . . On application of the defendant at any time before judgment the court may, and in case of a defendant who appeared without counsel at the time of the plea to court must, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted.

". . . . . . . . . . . . . . . . . . . . . . .

"This section shall be liberally construed to effect these objects and to promote justice."

overreaching the free will of defendant, or (d) was there a strong and convincing showing that defendant had been deprived of any legal right by an extrinsic cause?"

■ We are persuaded that there was a clear and convincing showing that the free will and judgment of the defendant were overcome by extrinsic causes, viz., the district attorney's suppression of evidence favorable to defendant.

Diminished capacity due to possible intoxication was the only possible defense to the charge of burglary in the instant case. Defendant's blood alcohol level of .19 was substantial enough to cause defense counsel to explore the possible correlation between defendant's blood alcohol level and his ability to form the requisite specific intent. It also became apparent to LeClerc that the time of taking the blood sample was a critical element in interpreting the significance of the blood alcohol level. The district attorney's advice to him that the sample was taken between time of arrest and time of booking was related to the medical expert who relied upon it and advised the defense of diminished capacity was futile.

When advised the blood sample was actually taken from the defendant over an hour later, at 3:30 a.m., Dr. Olson testified at the evidentiary hearing that this would indicate a blood alcohol level of .22 at the time of arrest. Under such circumstances, the doctor stated: "[V]ery probably . . . he [the defendant] didn't know what he was doing." That such evidence would have been crucial to defendant's ability to form specific intent can scarcely be gainsaid.

Had LeClerc been aware of the critical time factor, it is reasonable to infer he would never have advised his client to forsake his defense of diminished capacity and enter a plea of guilty. Moreover, from the meticulous manner in which the trial judge questioned counsel on the change of plea proceedings, it is reasonable to assume that he would not have permitted defendant to change his plea had he been aware of the true facts.

The uncontroverted evidence demonstrated that the deputy district attorney in charge of the case was aware of LeClerc's erroneous understanding concerning the time the blood sample was actually taken, but chose to remain silent even after it was specifically called to his attention by the deputy sheriff in court during the change of plea proceedings. Under such circumstances the conduct of the district attorney, in failing to disclose the true facts to defense counsel and the court, deprived defendant of the right to assert a defense to the charge. Such conduct of the

district attorney is tantamount to a suppression of evidence and cannot be condoned; it falls short of the standards well established and most recently articulated in *In re Ferguson* (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234].

█ The People contend, however, there was no suppression of the evidence since the district attorney's entire file was made available to defense counsel. (*People* v. *Vick* (1970) 11 Cal.App.3d 1058 [90 Cal. Rptr. 236].) While the practice of district attorneys in many counties of the state to make their file available to defense counsel would appear to be commendable, such practice does not discharge the duty of the district attorney. Moreover, it may prove to be "a trap for the unwary if the prosecuting attorney does not know that he is under a duty to disclose evidence favorable to the defense. . . ." (*In re Ferguson, supra,* 5 Cal. 3d at p. 532.)

The language of our Supreme Court in *Ferguson* (at pp. 531-533) is apposite: "The duty of the district attorney is not merely that of an advocate. His duty is not to obtain convictions, but to fully and fairly present to the court the evidence material to the charge upon which the defendant stands trial, and it is the solemn duty of the trial judge to see that the facts material to the charge are fairly presented. (*People* v. *Kiihoa,* 53 Cal.2d 748, 753 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Sheffield,* 108 Cal.App. 721, 732 [293 P. 72].) In the light of the great resources at the command of the district attorney and our commitment that justice be done to the individual, restraints are placed on him to assure that the power committed to his care is used to further the administration of justice in our courts and not to subvert our procedures in criminal trials designed to ascertain the truth.

". . . . . . . . . . . . . . . . . . .

"Implementation of this policy requires recognition of a duty on the part of the prosecution to disclose evidence to the defense in appropriate cases.

". . . . . . . . . . . . . . . . . . .

"Although a request for production of evidence may be a factor to consider in determining a charge of suppression of evidence, we have recognized that 'in some circumstances the prosecution must, without request, disclose substantial material evidence favorable to the accused.' (*In re Lessard, supra,* 62 Cal.2d 497, 509 [42 Cal.Rptr. 583, 399 P.2d 39].) . . .

". . . . . . . . . . . . . . . . . . .

". . . The basis of the rule requiring disclosure by the prosecution, as we have seen, is that the defendant may otherwise be deprived of a fair trial, and thus we must consider all of the matters bearing on the ultimate question of the fairness of the trial."

■ The People further contend that the trial judge was not bound to accept and give credence to the affidavits submitted by defendant in support of the motion to set aside the plea of guilty. (*People* v. *Caruso* (1959) 174 Cal.App.2d 624, 636 [345 P.2d 282].) In *People* v. *Kirk* (1950) 98 Cal.App.2d 687, at page 692 [220 P.2d 976], the court stated: "A trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence contradicting it, and this rule applies to an affidavit." (See *People* v. *Parker* (1961) 196 Cal.App.2d 704 [16 Cal.Rptr. 718]; *People* v. *Beck* (1961) 188 Cal.App.2d 549 [10 Cal. Rptr. 396]; *People* v. *Perry* (1963) 220 Cal.App.2d 841 [34 Cal.Rptr. 110]; *People* v. *Knight* (1951) 106 Cal.App.2d 312 [234 P.2d 992].) An examination of the cases cited for this principle reveals the courts in those cases are generally referring to affidavits containing self-serving declarations made by a defendant under circumstances casting doubt on their reliability. Moreover, they generally deal with matters peculiarly and only within defendant's knowledge and are incapable of being controverted by the district attorney.

Thus, in *People* v. *Kirk, supra,* the trial judge pointed out that the affidavits of defendant were inherently improbable and absolutely ridiculous. In *People* v. *Beck, supra,* 188 Cal.App.2d at page 553, it was stated, "the trial court was not bound to give full credence to the statements in defendant's affidavit . . . even though they are uncontradicted because of defendant's obvious interest in the outcome of the proceeding." In *People* v. *Parker* (1961) 196 Cal.App.2d 704 [16 Cal.Rptr. 718], defendant averred he was "confused and hesitantly entered a plea of guilty." The court observed, at page 708, "There was no showing of duress, fraud, or other force overreaching the will of defendant or that defendant had been deprived of any right by an extrinsic cause."

More in point is *People* v. *Campos* (1935) 3 Cal.2d 15 [43 P.2d 274], where defendant and his counsel both filed affidavits in support of a motion to withdraw a plea of guilty. The averments in the affidavits charged that defendant was induced to enter a guilty plea to first degree murder on the representations of the district attorney to defendant and his counsel that defendant would not receive the death penalty; he was thereafter sentenced to death. The People did not file any affidavits in opposition.

The *Campos* court held that if the district attorney failed to file

counteraffidavits and failed to present any evidence to the contrary under such circumstances, the trial court could not ignore the averments of the affidavits filed in behalf of the defendant. The case was remanded to the trial court to permit a withdrawal of defendant's plea of guilty. (See also *People* v. *McGarvy* (1943) 61 Cal.App.2d 557 [142 P.2d 92]; *People* v. *Young* (1956) 138 Cal.App.2d 425 [291 P.2d 980].)

In *Campos,* as well as in the instant case, we discern the affidavits in support of the motion to withdraw the plea of guilty specifically charge a course of misconduct which can be readily answered by the district attorney. Moreover, defendant's showing of overreaching in the case at bench is much stronger than that made in *Campos*. Even if the averments in the affidavits of defendant and his counsel were to be given little weight, the affidavit of the deputy sheriff can scarcely be ignored. His affidavit specifies with particularity the conduct of the district attorney in concealing the time factor from LeClerc. Under such circumstances the failure of the People to controvert the material allegations of misconduct leads us to the inescapable conclusion that the averments cannot be ignored.

"It is settled in this state that where on account of duress, fraud or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on the merits, the court . . . may . . . if a properly supported motion is seasonably made, grant him the privilege of withdrawing his plea of guilty and of reassuming the situation occupied by him before plea of any kind was entered. (*People* v. *Schwarz,* 201 Cal. 309, 314 [257 Pac. 71].) In other words, as stated in *People* v. *Miller,* 114 Cal. 10, 16 [45 Pac. 986], 'the law seeks no unfair advantage over a defendant, but is watchful to see that the proceedings under which his life or liberty is at stake shall be fairly and impartially conducted. It holds in contemplation his natural distress, and is considerate in viewing the motives which may influence him to take one or another course. Therefore, it will permit a plea of guilty to be withdrawn if it fairly appears that defendant was in ignorance of his rights and of the consequences of his act, or was unduly and improperly influenced either by hope or fear in the making of it.' " (*People* v. *Campos, supra,* 3 Cal.2d at p. 17.)

This court commented in *People* v. *McGarvy, supra,* 61 Cal.App.2d at page 564: "[T]he withdrawal of a plea of guilty is within the discretion of the trial court, and as such discretion must be exercised upon the facts of each individual case, it is difficult to lay down a general rule. However, the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been

held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty. (*State* v. *Williams,* 45 La.Ann. 1356, 1357 [14 So. 32]; 20 A.L.R. 1450.) . . .

"We believe this is a case in which the court below should have exercised its discretion in favor of defendant."

It appears to us that clear, convincing and uncontroverted evidence supports the defendant's contention that his guilty plea was entered due to factors outside his control which overcame his exercise of free judgment. Accordingly, it was an abuse of discretion for the trial court to deny the motion of defendant to set aside the plea of guilty.

In view of our holding on the suppression of evidence, it is unnecessary for us to consider defendant's contention that trial counsel was inadequate.

The judgment is reversed.

Richardson, P. J., and Friedman, J., concurred.