[Crim. No. 19988. Dec. 29, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY NEAL HOLLAND, Defendant and Appellant.

**COUNSEL**

Timothy Neal Holland, in pro. per., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BIRD, C. J.—Timothy Neal Holland appeals from a judgment of conviction entered upon a plea of guilty to one count of possession of cocaine (Health & Saf. Code, § 11350). ▮ Appellant contends that he was denied his constitutional right to counsel when the state unlawfully prevented him from using his savings to retain private counsel. This court agrees.[1]

### I

On March 22, 1975, Santa Cruz County law enforcement officers arrested appellant for narcotics offenses and searched his home pursuant to a search warrant. At that time, appellant asked the arresting officers to take possession of $685 in his house to prevent the money from being stolen while he was in jail. The officers seized the money, which represented appellant's life savings. A complaint was subsequently filed alleging a violation of Health and Safety Code section 11352 (sale of cocaine).

On March 28, 1975, during appellant's initial appearance in municipal court, he requested a continuance to retain counsel. "I haven't had the opportunity to confer with the counsel of my choice. . . . I don't want the Public Defender, Your Honor. I would rather retain a counsel of my choice. I would like to have an opportunity to do that." The court granted a one-week continuance.

At his next court appearance on April 4, 1975, appellant stated he still wanted to retain counsel of his choice but had been unable to do so. "I'm trying to get together the money to hire one. And also, the district attorney confiscated my life's savings and I'm trying to get that back." The court did not further question appellant about this problem, but granted another continuance.

On April 16, 1975, appellant stated: "When I appeared before the Court before, I told Your Honor that my life savings had been confiscated, I indicated, at the time of my arrest. I've been trying the last two weeks to get that money." When the court indicated it would appoint the public defender, appellant stated he would rather represent himself for the purpose of filing a motion to secure the return of his money which "the district attorney illegally confiscated . . . ." When the court rejected

---

[1]It is therefore not necessary to reach the other contentions raised by appellant.

this suggestion, appellant reluctantly acquiesced in the appointment of a public defender with the understanding that retained counsel could be substituted in at a later time.

Appellant's appointed counsel subsequently moved in municipal court under Penal Code section 1538.5 for the suppression of all the evidence and the return of all the money seized during the March 22, 1975, search of appellant's home. The motion was argued at appellant's preliminary hearing. The court denied the motion and appellant was held to answer for violating Health and Safety Code section 11352.

On November 6, 1975, appellant's counsel orally moved in superior court for the return of the money seized at appellant's home. The court found that appellant was entitled to have his money returned to him. However, when the money was not returned, a written motion for its return was filed on November 28, 1975.

At proceedings held on December 1, 1975, appellant's counsel attempted to argue the motion for the return of appellant's money. While recognizing that the court had previously held the money belonged to appellant, the court refused to entertain appellant's motion.[2] Rather, appellant was informed that if the plea bargain offered by the district attorney was not accepted, trial would be set to begin in one week. At that point, appellant entered a plea of guilty to an amended information charging a violation of Health and Safety Code section 11350.

---

[2]When the motion was argued on December 11, 1975, the court reaffirmed its November 6th ruling that appellant was entitled to his money. However, the court refused to order the money returned because it concluded that the sentencing judge should have discretion to use that sum to reimburse the county for appellant's representation by the public defender and/or to pay any fine imposed by the court.

Appellant filed a petition for a writ of mandate on December 29, 1975, requesting the Court of Appeal to compel the trial court to order the $685 returned (1 Civ. 38213). The Court of Appeal summarily denied relief. On March 10, 1976, this court granted appellant's petition for hearing and retransferred the matter to the Court of Appeal with directions to issue an alternative writ of mandate. Following the issuance of the alternative writ but before the matter was heard by the Court of Appeal, the trial court issued an ex parte order returning $435 to appellant and retaining $250 to pay for the services of the public defender. Unable to secure the return of the $250 from the trial court or the Court of Appeal, appellant again petitioned this court for relief. This court granted appellant's petition and retransferred the matter to the Court of Appeal.

On September 14, 1976, the Court of Appeal issued an opinion affirming appellant's entitlement to those funds and ordering the superior court to return the remaining $250. That decision is now final. The record indicates that the district attorney finally delivered that sum to appellant on November 22, 1976, 20 months after the money was given to the Santa Cruz County authorities for safekeeping.

Following the imposition of sentence, appellant filed a timely notice of appeal and a statement in accordance with Penal Code section 1237.5,[3] requesting the issuance of a certificate of probable cause. Appellant specified three bases for appeal: (1) the denial of his constitutional right to the effective assistance of counsel through the unjustified retention of his life savings which were needed to retain private counsel;[4] (2) the denial of his "constitutional right of self-representation"; and (3) defects in the search warrant. Although the trial court denied appellant's request for the certificate on March 9, 1976, the court subsequently prepared and filed an extensive record on appeal with the Court of Appeal.

## II

█ █ In order to appeal from a judgment of conviction in the superior court following a plea of guilty, a defendant must ordinarily comply with the provisions of Penal Code section 1237.5.[5] That section authorizes an appeal based on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" and establishes a procedure for effecting such an appeal. The trial court is empowered to review the statement of the grounds of the appeal to preclude those appeals which raise no issues cognizable after a guilty plea or which raise cognizable issues which are "clearly frivolous and

[3]Section 1237.5 provides:

"No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where:

"(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and

"(b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

[4]Appellant's statement described his efforts to secure the return of his money. He also stated that "[b]etween March 28, 1975, and April 12, 1975, two private attorneys . . . negotiated on separate occasions directly with the District Attorney's office on my behalf for the return of my money so that I might retain their services." He subsequently offered to provide the Court of Appeal with declarations from each attorney concerning his efforts to secure appellant's funds.

[5]See footnote 3, *ante.*

A defendant need not comply with section 1237.5 and obtain a certificate of probable cause if the defendant: (1) challenges a search or seizure which had been attacked under Penal Code section 1538.5 "at some stage of the proceedings prior to conviction" (Pen. Code, § 1538.5, subd. (m); *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 8 [136 Cal.Rptr. 409, 559 P.2d 1028]; *Moran* v. *St. John* (1968) 267 Cal.App.2d 474, 477-478 [73 Cal.Rptr. 190]); or (2) does not challenge the validity of the plea but asserts some error in a proceeding subsequent to the plea (*People* v. *Kaanehe, supra,* 19 Cal.3d at p. 8; *People* v. *Santos* (1976) 60 Cal.App.3d 372, 376 [131 Cal.Rptr. 426]). These exceptions are reflected in California Rules of Court, rule 31(d), which implements the provisions of Penal Code

vexatious . . . ." (*People* v. *Ribero, supra,* 4 Cal.3d at p. 63, fn. 4; *In re Brown* (1973) 9 Cal.3d 679, 683 [108 Cal.Rptr. 801, 511 P.2d 1153]; *People* v. *Ward, supra,* 66 Cal.2d at p. 575.)

It is not the trial court's responsibility to determine if there was an error in the proceedings. The trial court's sole objective is to eliminate those appeals "having no possible legal basis" by refusing to issue a certificate of probable cause. (*People* v. *Warburton* (1970) 7 Cal.App.3d 815, 819 [86 Cal.Rptr. 894]; see *People* v. *Kaanehe, supra,* 19 Cal.3d at p. 9.) ■ Section 1237.5 requires the trial court to certify any arguably meritorious appeal to the appellate courts. Thus, if the statement submitted by the defendant in accordance with section 1237.5 presents any cognizable issue for appeal which is not *clearly* frivolous and vexatious, the trial court abuses its discretion if it fails to issue a certificate of probable cause. (See *In re Brown, supra,* 9 Cal.3d at p. 683, fn. 6; *People* v. *Warburton, supra,* 7 Cal.App.3d at p. 820.)

■ ■■■ ■ When Penal Code section 1237.5 applies, the failure of the trial court to issue a certificate of probable cause precludes appellate review.[6] However, if the trial court has, by its statements or conduct, in effect certified the appeal, appellate review is proper.[7] For

section 1237.5. (*People* v. *Ribero* (1971) 4 Cal.3d 55, 60 [92 Cal.Rptr. 692, 480 P.2d 308]; *People* v. *Ward* (1967) 66 Cal.2d 571, 573, fn. 4 [58 Cal.Rptr. 313, 426 P.2d 881].)

Rule 31(d) provides:

"In cases in which a judgment of conviction was entered upon a plea of guilty or nolo contendere, the defendant shall file the statement required by Section 1237.5 of the Penal Code, which shall serve as a notice of appeal, within 60 days after the rendition of judgment, but the appeal shall not be operative unless the trial court executes and files the certificate of probable cause required by that section. Within 20 days after the defendant files his statement the trial court shall execute and file either a certificate of probable cause or an order denying such a certificate and shall forthwith notify the parties of the granting or denial of such certificate.

"If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere is based solely upon grounds (1) occurring after entry of such plea which do not challenge the validity of the plea or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code, the provisions of section 1237.5 of the Penal Code requiring a statement by the defendant and a certificate of probable cause by the trial court are inapplicable, but the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds.

"The time for preparing, certifying and filing the record on appeal or for filing an agreed statement shall commence to run when the appeal becomes operative."

[6]The propriety of a trial court's refusal to issue a certificate of probable cause is reviewable by a petition for a writ of mandate. (*In re Brown, supra,* 9 Cal.3d at p. 683.)

[7]See, e.g., *In re Brown, supra,* 9 Cal.3d at page 683, footnote 6; *People* v. *Flores* (1971) 6 Cal.3d 305, 308 [98 Cal.Rptr. 822, 491 P.2d 406]; *People* v. *Herrera* (1967) 66 Cal.2d 664, 665 [58 Cal.Rptr. 319, 426 P.2d 887]; *People* v. *Martinez* (1975) 46 Cal.App.3d 736, 743 [120 Cal.Rptr. 362, 121 Cal.Rptr. 443]; *People* v. *Fulk* (1974) 39 Cal.App.3d 851, 853, footnote 1 [114 Cal.Rptr. 567]; *People* v. *Dena* (1972) 25 Cal.App.3d 1001, 1005 [102 Cal.Rptr. 357]; *People* v. *Warburton, supra,* 7 Cal.App.3d at page 820.

example, this court has held that where ". . . the clerk prepares and the trial court certifies a record on appeal in circumstances where to have denied a certificate . . . would have constituted an abuse of discretion," the appellate court must review appellant's contentions. (*In re Brown, supra,* 9 Cal.3d at p. 683, fn. 6.)

■ This case satisfies the requirements identified in *Brown*. In his statement of the grounds of his appeal, appellant asserted he was denied the right to counsel. That alleged constitutional defect in the proceedings is cognizabie after a plea of guilty. (See *In re Brown, supra,* 9 Cal.3d at p. 682; *People* v. *Ribero, supra,* 4 Cal.3d at p. 63.) As demonstrated, *post,* this contention was not clearly frivolous, and a certificate of probable cause should have been issued to permit appellate review of this issue.

Following the filing of appellant's March 19, 1976, request for the incorporation of certain transcripts and documents in the record on appeal, the trial court ordered the preparation of an extensive record on appeal, including many documents not considered part of the normal appellate record. (Cal. Rules of Court, rule 33(a).) While part of this record was arguably prepared to permit appellate review of appellant's challenge to the search warrant,[8] numerous transcripts and documents were included which did not relate in any-way to that issue. Most of these additional documents and transcripts were specifically requested by appellant.

For example, on appellant's request, the court had reporter's transcripts prepared of the hearings on March 28, 1975, April 4 and 16, 1975, November 6, 1975, and December 11, 1975, and included a copy of appellant's November 28, 1975, motion in the clerk's transcript. During the first three hearings, appellant repeatedly informed the court that he wished to retain private counsel but was unable to do so because the state was unjustifiably holding his life savings. During the November 6th hearing, the superior court first stated that appellant was entitled to the return of his money. The motion filed on November 28th sought to secure the return of appellant's money which the district attorney's office had continued to withhold. At the December 11th hearing on that motion, the

---

[8]In its March 9, 1976, order the court denied appellant's request for a certificate of probable cause to permit appellate review of this issue because appellant "presents no evidence of the incorrectness of [the denial of his prior Penal Code section 1538.5 motion]." The court erred since appellant did not need a certificate to appeal on that .ground. (See fn. 5, *ante.*) The court conceded this issue was appealable during a hearing on March 25, 1976.

court reaffirmed that the money belonged to appellant. While each document was relevant in adjudicating the asserted denial of appellant's right to counsel, none was relevant in adjudicating the challenge to the search warrant. The inclusion of these documents in the record lodged with the Court of Appeal was sufficient to certify for appeal the contention that appellant was denied the right to counsel.[9] (See *People* v. *Fulk, supra,* 39 Cal.App.3d at p. 853, fn. 1.)

■ The constitutional right to the effective assistance of counsel is "among the most sacred and sensitive of our civil rights." (*Magee* v. *Superior Court* (1973) 8 Cal.3d 949, 954 [106 Cal.Rptr. 647, 506 P.2d 1023].) That right is "broader than . . . the bare right to legal representation . . ." and encompasses the right to retain counsel of one's own choosing. (*People* v. *Byoune* (1966) 65 Cal.2d 345, 348 [54 Cal.Rptr. 749, 420 P.2d 221]; accord *Chandler* v. *Fretag* (1954) 348 U.S. 3, 9 [99 L.Ed. 4, 9-10, 75 S.Ct. 1]; *Powell* v. *Alabama* (1932) 287 U.S. 45, 53 [77 L.Ed. 158, 162-163, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 438 [38 Cal.Rptr. 884, 392 P.2d 964].) "[T]hough it is clear that a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney. . . . [¶] . . . [T]he state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 207-208 [53 Cal.Rptr. 284, 417 P.2d 868] [fn. omitted, original italics]; accord *People* v. *Johnson* (1970) 5 Cal.App.3d 851, 858

[9]Immediately after the trial court issued its March 9th order denying a certificate of probable cause on this issue, it became clear that the reason for that denial was erroneous. The certificate was denied because appellant had "previously petitioned the Court of Appeal for a writ of mandate [No. 38213] on this basis which was denied . . . ." However, on March 10, 1976, this court granted appellant's petition for hearing in 1 Civil 38213. The petition was retransferred to the Court of Appeal, which issued an alternative writ of mandate on March 12, 1976, ordering the superior court "to return the $685.00 taken from petitioner on March 22, 1975 . . ." or to show cause why it has not been done. On March 15, 1976, the superior court ordered part of appellant's money returned to him. Further, during a discussion with appellant's appointed counsel on March 25, 1976, concerning appellant's contention that the unjustified retention of his money denied him the right to counsel, the court observed that while it did not believe appellant was entitled to the money, the appellate court might disagree. Thus, it seems that the trial court recognized that appellant was raising a nonfrivolous issue. It was during this period that the court ordered the preparation of the enlarged record.

[85 Cal.Rptr. 485]; *People* v. *Brady* (1969) 275 Cal.App.2d 984, 992 [80 Cal.Rptr. 418]; *United States* v. *Sheiner* (2d Cir. 1969) 410 F.2d 337, 342.)

■ Thus, the trial court is charged with the responsibility of protecting an accused's right to have the assistance of counsel. (*Glasser* v. *United States* (1942) 315 U.S. 60, 71 [86 L.Ed. 680, 699-700, 62 S.Ct. 457]; *People* v. *Vermouth* (1974) 42 Cal.App.3d 353, 359 [116 Cal.Rptr. 675].)[10] If a defendant's right to counsel is abridged, a reversal of a subsequent conviction is required. (*Holloway* v. *Arkansas* (1978) 435 U.S. 475 [55 L.Ed.2d 426, 98 S.Ct. 1173]; *Glasser* v. *United States, supra,* 315 U.S. 60; *People* v. *Crovedi, supra,* 65 Cal.2d 199; *People* v. *Douglas, supra,* 61 Cal.2d 430.)

These principles were applied in a recent Court of Appeal decision arising out of events markedly similar to the present case. In *People* v. *Vermouth, supra,* 42 Cal.App.3d 353, a search of defendants' home resulted in the seizure of nearly $6,500. Defendants promptly moved for the return of that sum to retain private counsel. Although that currency was neither marked money nor contraband, the trial court denied defendants' motion. Even after the Court of Appeal held the denial of defendants' motion was an abuse of discretion, the trial court refused to order the money returned in light of the uncertain status of a federal tax lien. (*Buker* v. *Superior Court* (1972) 25 Cal.App.3d 1085 [102 Cal.Rptr. 494].) Defendants' subsequent request to delay the trial to permit the resolution of the status of the tax lien was denied by the trial court. Finally, at a hearing several months *after* defendants had been convicted, their entitlement to that money was sustained. (*People* v. *Vermouth, supra,* 42 Cal.App.3d at pp. 356-359.) Defendants' inability to secure the earlier return of their money had already precluded them from using their own resources to retain separate counsel for trial.

The Court of Appeal stated that the trial court "had both the power and *duty* to expedite proceedings so that defendants' right to be represented by independent counsel of their choice was not violated." (*Id.,* at p. 359, italics added.) Defendants had promptly and consistently asserted their entitlement to the seized currency, and the need to resolve their problem was clear. Since the trial court failed to remedy defendants' predicament prior to trial, the resulting interference with the defendants'

---

[10]For example, a defendant must be assured "a reasonable opportunity to employ and consult with counsel . . . ," and counsel must be given adequate time to prepare a defense. (*Chandler* v. *Fretag, supra,* 348 U.S. at p. 10 [99 L.Ed. at p. 10]; *People* v. *Douglas, supra,* 61 Cal.2d at pp. 435-436.)

right to retain counsel of their choice required the reversal of their convictions.[11]

The trial court's responsibility to assure that a defendant's right to counsel is fully protected was also evident in *People* v. *Crovedi, supra,* 65 Cal.2d 199. In that case, the trial court refused to grant a proposed seven-week continuance in the trial to permit the return of defendant's counsel, who had become ill during the trial. That attorney's law partner was appointed to represent the defendant and ordered to continue the trial, over the objections of the defendant and appointed counsel. Thus, the defendant was denied the assistance of his chosen counsel while being forced to proceed with another attorney.

This court held the state has a "duty to refrain from unreasonable interference with the individual's desire to defend himself in whatever manner he deems best, using every legitimate resource at his command." (*Id.,* at p. 206.) Specifically, ". . . a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler* v. *Fretag,* 348 U.S. 3 [99 L.Ed. 4, 75 S.Ct. 1]." (*Id.,* at p. 207.) Since the requested delay would not have unduly disrupted "the orderly processes of justice," this court held the interference with defendant's right to be represented by counsel of his choice required the reversal of his conviction, even though defendant was represented by appointed counsel. (*Id.,* at pp. 208-209; accord *People* v. *Byoune, supra,* 65 Cal.2d 345 [conviction reversed where the trial judge refused defendant's request made the day before trial for a continuance to secure private counsel to replace appointed counsel].)

---

[11]In *United States* ex rel. *Ferenc* v. *Brierley* (E.D.Pa. 1970) 320 F.Supp. 406, 408, the defendant had repeatedly sought to secure the return of money seized at the time of his arrest to retain private counsel. After concluding that the government had no justifiable claim to approximately $600 of that money, the court held: "[i]t is well established that where a defendant is able to retain counsel of his own choice, he must be given a reasonable opportunity to do so. 'It is a fundamental principle that an accused be permitted to choose his own counsel, the practice of assigning counsel being reserved for cases where the accused cannot or does not select his own.' [Citation.] The right of an accused to counsel for his defense, secured in state prosecutions by the Fourteenth Amendment guarantee of due process, includes not only the right to have an attorney appointed by the state where necessary, but also the right of an accused to retain counsel of his own choosing. [Citations.]" The availability of a competent appointed counsel was irrelevant—the defendant ". . . was entitled to counsel of his choice *because he could afford it,* no matter how well qualified court-appointed counsel may have been." (*Id.,* at p. 409, italics in original.) Consequently, defendant's petition for a writ of habeas corpus was granted. (See also, *United States* v. *Brodson* (E.D.Wis. 1955) 136 F.Supp. 158, revd. on other grounds (7th Cir. 1957) 241 F.2d 107; Tarlow, *Criminal Defendants and the Abuse of Jeopardy Tax Procedures* (1975) 22 UCLA L.Rev. 1191, 1210-1211.)

Consider the facts in this case. Appellant promptly and diligently attempted to secure the return of his money given to law enforcement officers at the time of his arrest. He needed the money to retain private counsel to represent him. When the money was not returned, appellant repeatedly raised this problem before the trial court. Even after the trial court conceded appellant was entitled to the money at the November 6th hearing, the state refused to return it. As a result, no portion of the money was returned to appellant until after he had been convicted and sentenced. Appellant's entitlement to that money was affirmed by the Court of Appeal. (1 Civ. 38213, see fn. 2, *ante.*)

The state's refusal to return appellant's life savings effectively blocked appellant's exercise of his constitutional right to retain counsel of his choice. He was not merely prevented from securing the assistance of a particular attorney, as in *People* v. *Crovedi, supra,* but precluded from using his own resources to retain any private counsel.

This interference with appellant's constitutional right could have been corrected through prompt remedial assistance by the trial court. The court should have exercised "a resourceful diligence directed toward the protection [of appellant's right to counsel of his choice] to the fullest extent consistent with effective judicial administration." (*People* v. *Crovedi, supra,* 65 Cal.2d at p. 209; accord *People* v. *Vermouth, supra,* 42 Cal.App.3d at p. 359; *Glasser* v. *United States, supra,* 315 U.S. at p. 71 [86 L.Ed. at p. 699-700].) Providing appellant with appointed counsel was an insufficient remedy since his constitutional right to counsel entailed more than the presence of a skilled advocate. (See, e.g., *People* v. *Byoune, supra,* 65 Cal.2d 345.) He was entitled to use his own resources to secure counsel of his choice. Since the trial court failed to intervene to permit appellant to exercise his constitutional right to counsel, the conviction cannot stand.

The judgment is reversed.

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.,** Dissenting.—The question presented is whether defendant was denied the means of exercising his constitutional right to retain counsel of choice by the People's failure to return $685 defendant allegedly entrusted to the police for safekeeping when he was arrested.

In an evidentiary hearing held pursuant to a habeas corpus proceeding this question might be reliably resolved, but it cannot be on the record available in this appeal.

Suppose the $685 had been returned to defendant. It constituted his "life savings." (*Ante,* p. 81.) Would he have been able to retain private counsel for that sum?

Defendant was charged with two counts of selling cocaine (Health & Saf. Code, § 11352) and one count of possessing peyote (Health & Saf. Code, § 11350). To anyone familiar with the going rate for legal services and with the understandable reluctance of counsel to undertake a case of this sort unless the fee is paid in advance, it would appear most unlikely defendant would have been able to retain an attorney to represent him on these three felony charges for $685. Certainly defendant never represented to the court that he had found an attorney willing to represent him if only his $685 were returned.[1]

The cases relied upon by the majority must be distinguished. The sum involved in *People* v. *Vermouth* (1974) 42 Cal.App.3d 353 [116 Cal.Rptr. 675] was 10 times the amount withheld here. The procedure followed in *United States* ex rel. *Ferenc* v. *Brierley* (E.D.Pa. 1970) 320 F.Supp. 406 should have been adopted here. In that habeas corpus proceeding an evidentiary hearing was held on the question whether the withholding of the sum involved prevented the relator from hiring private counsel.

The judgment should be affirmed.

---

[1] The majority note that in the statement filed with his notice of appeal pursuant to Penal Code section 1237.5 defendant alleged that " '[b]etween March 28, 1975, and April 12, 1975, two private attorneys . . . negotiated on separate occasions directly with the District Attorney's office on my behalf for the return of my money so that I might retain their services.' " (*Ante,* p. 83, fn. 4.)

This statement pursuant to section 1237.5 was, of course, made subsequent to the entry of judgment. Therefore, allegations made in the statement, like allegations made in an affidavit in support of a motion for a new trial, are not part of the record on appeal for the purpose of reviewing the propriety of action taken by the trial court prior to the entry of judgment and without the benefit of the statement. (See, *Ward* v. *Litowsky* (1970) 5 Cal.App.3d 437, 439-440 [85 Cal.Rptr. 278]; see also *Gutierrez* v. *Superior Court* (1966) 243 Cal.App.2d 710, 729-730 [52 Cal.Rptr. 592]; *People* ex rel. *Dept. Pub. Wks.* v. *Brusati* (1963) 223 Cal.App.2d 643, 644-645 [35 Cal.Rptr. 820].) Moreover, a reviewing court could not simply take the allegations at face value. They would at most serve to frame the issue to be resolved in an evidentiary hearing held pursuant to a habeas corpus proceeding.