[Crim. No. 5477. Fourth Dist., Div. One. Oct. 4, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JON WAYNE VERMOUTH et al., Defendants and Appellants.

## COUNSEL

Barry Tarlow for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Conrad D. Petermann and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**AULT, J.**—Jon Wayne Vermouth and Harold W. Buker appeal from judgments (orders granting probation) entered after a jury found them guilty of possession of marijuana (a lesser included offense of possession

of marijuana for sale, the crime charged in count I of the information) and cultivation of marijuana (count II). A motion for new trial was granted as to a third conviction (possession of restricted dangerous drugs). A fourth charge, maintaining a place for the sale of marijuana, had been dismissed on motion of the People at the beginning of the trial.

On appeal defendants raise the following contentions:

(1) their constitutional right to counsel of their choice was violated by the trial court's refusal to grant their motion for the return of money seized by the police from their residence ($6,424), or their motion to continue the criminal trial until their right to the money had been resolved;

(2) their motion to suppress evidence was erroneously denied;

(3) the evidence is insufficient to support their convictions of cultivation of marijuana;

(4) the prosecutor was guilty of prejudicial misconduct during his argument to the jury.

### Right to Counsel

On July 28, 1971, law enforcement officers searched defendants' residence pursuant to a warrant. They seized many items including: (1) documents tending to establish the defendants were the lessees of the residence, (2) marijuana plants growing in pots and planters on the sun deck of the house, (3) marijuana, restricted dangerous drugs and a small amount of cocaine and (4) $6,424 in currency. On the basis of the evidence seized, defendants, and two other persons who were present in the house at the time of the search, were arrested and charged with possessing marijuana for sale, cultivating marijuana, possessing restricted dangerous drugs, and maintaining a place for selling marijuana (Health & Saf. Code, §§ 11530.5, 11530.1, 11910 and 11557). The four were held to answer after a preliminary hearing at which they were represented by a single attorney, Mr. Tarlow, apparently having waived any conflict of interest for the purpose of that hearing.[1]

After the four-count information was filed against them, defendants filed a nonstatutory motion for return of the $6,424 seized from their residence, contending there was a conflict of interest and that the money was needed to hire separate counsel to represent them. Despite the fact the defendants offered to stipulate that currency in the amount seized was found in and

---

[1]The charges against the two other defendants were apparently dropped later after the superior court granted a motion under Penal Code section 995 as to them.

taken from the residence, the People opposed the motion, contending the money itself was necessary evidence to prove the defendants' intention to sell marijuana.

On December 17, 1971 the trial court denied defendants' motion to return the money, finding "some color" on which it could be admitted in evidence to prove intention to sell.

In January 1972 defendants brought on for hearing their statutory motions under Penal Code sections 1538.5 and 1540 to suppress the evidence seized in the search of their residence. In these motions defendants challenged the legality of the warrant and the search of their residence. The People argued the trial court should not hear the motions because it had heard and ruled upon defendants' previous motion for the return of the $6,424. The motions were later dismissed by the trial court on the ground it had no jurisdiction to hear them.

Defendants Buker and Vermouth then petitioned this court for relief and obtained a writ of mandate directing the superior court to set aside its previous orders, to hear the statutory motions to suppress and return evidence which it had dismissed (Pen. Code, §§ 1538.5 and 1540), and to conduct a further hearing on the nonstatutory motion for the return of the $6,424 (*Buker* v. *Superior Court,* 25 Cal.App.3d 1085 [102 Cal.Rptr. 494]). We held the denial of the nonstatutory motion for return of the money upon the ground it should be retained in the custody of the court because there was "some color" upon which it could be admitted in evidence, constituted an abuse of discretion as a matter of law (*Buker, supra,* p. 1090). A further hearing on the motion was required because hearsay statements in the record cast doubt on defendants' claim they were the owners and entitled to possession of the money.[2]

---

[2]In *Buker, supra,* at page 1090, this court said: "The prosecuting attorney told the court the currency was levied upon by the federal government, acting through the Department of Internal Revenue, on August 10, 1971, while it was in possession of the sheriff following seizure under the search warrant, and a federal lien against it was on file. Thereupon, counsel for defendants stated he 'had a prior levy, prior assignment signed by each of the defendants prior to the date of these levies; assigning the money to me for legal fees.' The court noted the federal government was not a party to the proceeding and for this reason, 'we cannot determine the priority of right or who is really entitled to it [the money].'" In *Buker, supra,* the action taken by the federal authorities was referred to as both a "lien" and a "levy." Characterization of the action taken by the federal authorities as a "levy" was mistaken. Examination of the superior court files in the criminal action and in the interpleader action filed at the court's direction shows the United States had not levied upon the funds but merely filed a notice of tax lien under the provisions of 26 United States Code sections 6321 and 6322.

After the People's petition for a hearing in *Buker* was denied by the Supreme Court on August 2, 1972, defendants' motion for the return of the $6,424 again came before the superior court on November 17. Although the United States authorities who had filed the lien were notified of the hearing by letter by defendants' attorney, they did not appear. The prosecutor again called the court's attention to the tax lien and urged the court not to turn over the money to defendants' attorney. Defendants' attorney presented an assignment of the funds signed by the defendants which predated the federal lien. He urged the court to release the funds to him so separate counsel could be hired.

The court concluded it could not adjudicate the dispute because the United States was not a party to the action. It ordered the county clerk to file an action in interpleader pursuant to Code of Civil Procedure section 386, joining the defendants, Mr. Tarlow, and the Internal Revenue Service and to deposit the $6,424 in those proceedings.

While the civil action was instituted and pending, the criminal case proceeded. In January 1973, pursuant to this court's order in *Buker, supra,* the superior court heard the motions to suppress and return evidence (Pen. Code, §§ 1538.5 and 1540). On February 1, by minute order, it denied the motions based upon its findings that (1) the officers complied with Penal Code section 1531 in entering the residence, and (2) the affidavit underlying the search warrant established probable cause to search.

Trial of the criminal action was set for March 7, 1973. On March 5, defendants' motion to continue the trial until the interpleader action could be heard, was heard and denied. An attorney from Mr. Tarlow's office argued that there was a possible conflict of interest between the defendants and that the money held by the court was crucial to the defense and necessary to hire separate counsel. The prosecutor vigorously opposed the continuance on the ground the case had already been pending for a year and a half, adding the "dangers of this kind of delay to the People's case are very obvious." In answer to the charge that the issues raised were well known long before and should have been raised earlier, defendants' attorney stated: "It is only because the trial court in this matter delayed in effect the return of the money which . . . [it] . . . was ordered to do by the appeal . . . we had hoped that the interpleader action would go forthwith. What had happened, the reason it was delayed was that the clerk had served the wrong person in the United States government and it was determined someone else had to be served. And so as of yet the interpleader action has not been determined . . . ." The court responded: "I think

this is too late to make such a motion. The matter is set for Wednesday. The People are ready. The motion for continuance is denied."

Defendants' jury trial began a few days later and ended in the guilty verdicts recited above on March 13. Buker and Vermouth were both represented by a single attorney from Mr. Tarlow's office. Neither testified at the trial.

In August 1973 the interpleader action came on for trial. It required about five minutes time. Although the United States Attorney had filed an answer in the action, putting the right to possession of the money in issue, he did not attend the trial. County counsel, representing the clerk, announced the United States government had withdrawn its lien. Mr. Tarlow's assignment was received in evidence. The court ordered the $6,424 paid to Mr. Tarlow and later signed a judgment to that effect.

Defendants first contend the criminal court's refusal to determine the issue and order the return of their money constituted an abuse of discretion, a violation of their Sixth Amendment right to be represented by counsel of their choice as well as their right to the effective assistance of counsel, and a failure to comply with this court's mandate in *Buker* v. *Superior Court, supra,* 25 Cal.App.3d 1085. They argue the interpleader action was unnecessary and that the issue could and should have been resolved by the criminal court on November 17, 1972. They point out the Internal Revenue Service had not levied upon the funds pursuant to 26 United States Code section 6331 et seq. but had merely assessed a tax against the defendants and given notice of lien pursuant to 26 United States Code sections 6321, 6322 and 6323. They contend such a lien, in contrast to a levy under section 6331 et seq., does not operate to prevent transfer of the property which is subject to the lien but merely constitutes an encumbrance which continues after the transfer is made. They assert the criminal court should have ordered the funds released to Mr. Tarlow subject to the lien rights, if any, of the federal authorities.

 While the argument is persuasive and appears to interpret the federal tax statutes correctly, we prefer to rest our decision on the alternate ground urged, i.e., an abuse of discretion in denying defendants' motion for a continuance of the criminal trial.

Our decision in *Buker* imposed a duty to determine defendants' right to the $6,424 held by the court prior to the criminal trial. If the court concluded an interpleader action was necessary, it had both the power and duty to expedite the proceedings so that defendants' right to be represented by independent counsel of their choice was not violated. The respect with

which California decisions have held this right is reflected in *People* v. *Crovedi,* 65 Cal.2d 199, where at page 207 [53 Cal.Rptr. 284, 417 P.2d 868] the court stated: "Thus, though it is clear that a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney. (See *People* v. *Logan,* 4 Cal. 188.) This is especially so when defendant is in no way responsible for the absence of his retained counsel. (*People* v. *Manchetti,* 29 Cal.2d 452, 458 [175 P.2d 533].) Likewise, in cases involving the representation of multiple defendants by a single attorney, an accused must be afforded reasonable opportunity for representation by retained counsel of his own choice whether or not a conflict of interest is shown. '[A] diversity of interest in the sense of any factual inconsistency between the defenses advanced is not the sole or necessarily the controlling consideration underlying the requirement that counsel for a codefendant not be forced upon another defendant. It is not necessary for [the defendant seeking independent representation] to show that he had some diversity of interest from [his codefendant] . . .; entirely apart from any factually apparent diversity of interest [the defendant is] entitled to the undivided loyalty and untrammeled assistance of his own counsel.' (*People* v. *Robinson,* 42 Cal.2d 741, 747-748 [269 P.2d 6]; see also *People* v. *Douglas,* 61 Cal.2d 430, 438 [38 Cal.Rptr. 884, 392 P.2d 964].)"

A defendant's request for a continuance to enable him to obtain independent counsel of his choice is addressed to the trial court's sound discretion, and not every denial of such a request constitutes an abuse of discretion. But, " '. . . a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler* v. *Fretag,* 348 U.S. 3 [75 S.Ct. 1, 99 L.Ed. 4]. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " (*Ungar* v. *Sarafite,* 376 U.S. 575, at p. 589 [11 L.Ed.2d 921, at p. 931, 84 S.Ct. 841], as quoted in *People* v. *Crovedi, supra,* p. 207.)

We hold the trial court was not justified in refusing the continuance under the total circumstances of this case. The reason advanced for the continuance was persuasive, consistent with the position taken by the defendants from the outset of the case, and consistent with this court's decision granting the petition for a writ of mandate. The People's opposition to the motion will not stand honest scrutiny. It is true, as they asserted, that over a year and a half had transpired since the defendants had been arrested

and charged. But this significant delay was attributable to the People and not to the defendants. The police seized money from the defendants' residence which was not marked, not contraband, and not described in the search warrant which issued. The prosecutor erroneously asserted, and convinced the trial court, the money should be retained as evidence and not returned to the defendants (*Buker, supra,* pp. 1089-1090). He erroneously asserted, and convinced the trial court, it lacked jurisdiction to hear and determine defendants' motions to suppress evidence under Penal Code sections 1538.5 and 1540 (*Buker, supra,* p. 1091). As a result, defendants' statutory motions were not ruled upon until eighteen months after their arrest, and the funds belonging to them were not released from the court's custody until five months after their conviction.

Moreover, the prosecutor's statement in opposition to the continuance (". . . the dangers of this kind of delay to the People's case are very obvious.") was less than candid in another respect. When the case was tried four days later, the prosecutor called three witnesses. All were then employees of the San Diego County Sheriff's Department. Nothing in the record indicates the People intended or needed to call any additional witnesses.

We reject the People's claim the defendants waived their right to be represented by separate independent counsel of their choice because the trial court at one stage of the proceedings offered to appoint counsel for one of them. Defendants had ample funds in the court's custody to retain separate counsel. At every turn the prosecutor sought to prevent them from obtaining the money. Once the criminal trial was over, all opposition melted and defendants' right to the funds was not even contested.[3]

Defendants' other contentions are either without merit or unnecessary to resolve because of our holding. ■ Use of binoculars by Officer Narron to confirm what he believed from unaided observation and the report of another police officer to be growing marijuana plants on the sun deck of defendants' residence did not invade defendants' reasonable expectation of privacy so as to invalidate either the warrant or the search. (See *On Lee* v. *United States,* 343 U.S. 747, 754 [96 L.Ed. 1270, 1276, 72 S.Ct. 967, 972]; 44 Cal.Jur.2d Rev., Searches and Seizures, § 7, p. 16; *People* v. *Bradley,* 1 Cal.3d 80, 84-86 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v.

---

[3]We note that each of the liens filed against Buker and Vermouth was in the sum of $3,212, exactly one-half of the money seized by the officers. We also note no court appearances were made by the federal authorities, and that the district attorney argued on behalf of the lien on every occasion. We see nothing wrong with this kind of cooperation, but it does place the People in a poor position to assert they bear no responsibility for the consequence of the lien.

*Edwards,* 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].) The marijuana plants were seen in plain and unobstructed view from a neighbor's backyard. Application of the plain-view doctrine is unaltered by an officer's employment of artificial illumination (*People* v. *Superior Court (Mata)* 3 Cal.App.3d 636, 639 [84 Cal.Rptr. 81]) and we see no reason to invoke a different rule where the visual aid employed is optical. In any event, it is clear Officer Narron believed the plants were marijuana when he first viewed them without aid of binoculars.

■ The affidavit established probable cause to search the inside of the residence. Observation of marijuana plants growing on the sun deck of the house gave probable cause to believe processed marijuana, seeds, tools and instruction books would be found inside the house. Here, as in *People* v. *Johnson,* 21 Cal.App.3d 235 [98 Cal.Rptr. 393], the officer stated his opinion based upon both his observation of the plants and his experience as a narcotics officer. This was sufficient to support the magistrate's finding of probable cause (*Hart* v. *Superior Court,* 21 Cal.App.3d 496, 498-499 [98 Cal.Rptr. 565]; *People* v. *Johnson, supra,* 21 Cal.App.3d 235, 242-243; *People* v. *Superior Court (Marcil)* 27 Cal.App.3d 404, 409-410 [103 Cal.Rptr. 874]).

■ We also conclude proof the marijuana plants were growing on the sun deck of the residence, coupled with evidence defendants had control of the premises, was sufficient to support their conviction of cultivating marijuana. Marijuana plants do not grow in pots and planters by chance. When they are found growing in that manner, it is reasonable to infer those who controlled and occupied the premises had something to do with their planting, cultivation or care. While this may not be the only reasonable inference deducible from such evidence, it is sufficient that it is one which may be fairly drawn.

"This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's [jury's] findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding." (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

The statement made by the prosecutor in his argument to the jury to which the defendants object was clearly improper. However, in view of our previous holding, we need not determine whether it was sufficiently prejudicial in the absence of an objection or a request for a jury admonition

to require reversal. If the case is re-tried, we are confident the improper remarks will not be repeated.

The judgments of conviction are reversed.

Brown (Gerald), P. J., concurred.

**WHELAN, J.**—I dissent and would affirm.

The majority opinion reverses on the ground the trial court abused its discretion in denying the motion of defendants, made two days before the trial date, set by stipulation some two months earlier, for a continuance of an unspecified length of time so that they might have access to an undetermined amount of money whose contingent availability was in the uncertain future, for the purpose of obtaining new counsel whose name or names were not mentioned and with whom no negotiation had ever been made, so far as was shown.

The right of a criminal defendant to counsel of his own choice, and the circumstances in which the denial of a motion for continuance may or may not be a denial of that right, need not be discussed further. Because of varying circumstances, the cases generally have been decided on an ad hoc basis. (See *People* v. *Crovedi,* 65 Cal.2d 199 [53 Cal.Rptr. 284, 417 P.2d 868]; *In re Hochberg,* 2 Cal.3d 870 [87 Cal.Rptr. 681, 471 P.2d 1]; *In re Watson,* 6 Cal.3d 831 [100 Cal.Rptr. 720, 494 P.2d 1264]; *People* v. *Manchetti,* 29 Cal.2d 452 [175 P.2d 533]; *People* v. *Johnson,* 5 Cal.App.3d 851 [85 Cal.Rptr. 485]; *People* v. *Smyers,* 261 Cal.App.2d 690 [68 Cal.Rptr. 194].)

The reasonableness, reality and sincerity of the motion for continuance on the grounds specified enter into the question whether there was an abuse of discretion in the circumstances that existed.

If the reasons stated by the district attorney in opposition to the motion for continuance on March 5 had no validity, that should not impeach the soundness of the court's ruling on the motion; and if the opposition of the district attorney then or in earlier stages of the proceeding were thought to be pointless and intransigent obstructiveness, impatience with and disapproval of such conduct should not inevitably compel a reversal.

There could be no doubt that the trial court's denial of the motion for continuance would have been proper if the motion for continuance had not been related to the fund involved in the interpleader action. Had that factor not been introduced, the expressed request to obtain other counsel would have been untimely when made on March 5 since the trial date of March 7 had been set by stipulation on January 15, 1973.

The entire record, including that of the criminal proceeding, the interpleader action, and the mandate proceeding, demonstrates that Vermouth and Buker claimed no interest in the fund, but claimed they had assigned it to Mr. Tarlow in payment of attorney fees not only for themselves but for their codefendants Robinson and Weisner who had joined in the assignment;[1] and demonstrates that Mr. Tarlow had performed services which reasonably had already exhausted the credit of the four defendants.

Any expectation Vermouth and Buker had that Mr. Tarlow would obtain other counsel for either or both of them could only have been as an exercise of magnanimity on his part, a magnanimity that could have as well been displayed in the period before the motion for continuance was made as afterward.[2]

[1]For that purpose it is unnecessary to consider just what the interests of the four defendants were in the fund at the date of the assignment to Mr. Tarlow. Phyllis Robinson and Charles F. Weisner obtained dismissals on the section 995 motion argued by Mr. Tarlow on February 7, 1972.

All four defendants signed the assignment, which stated it was made "as payment of legal fees for representation of the undersigned," and that it assigned "each and every interest held by the undersigned and each of them." Mr. Tarlow represented all four defendants at the preliminary hearing on October 7, 1971. The information was filed on October 21, 1971.

On December 7, 1971, all four defendants united in a motion for an order that the funds be returned, in which it was stated:

"Each of the defendants in the above-entitled case moves the court to authorize the return of the $6,424 that was seized at the time of the arrest so that defendants might use such funds to obtain an attorney of their choosing. The grounds for this motion are as follows: ·

"1. At the time of the arrest, $6,424 was seized from the residence. This amount of money has been designated as evidence and the municipal court would not release the money.

"2. Each of the defendants desires to be represented by an attorney of his or her own choosing and not by the same attorney and not by an attorney appointed by the court.

"3. Each defendant desires to use the funds which were seized for the purpose of obtaining such representation.

"4. Each defendant does not have other funds available to obtain a separate attorney of his own choosing to represent them."

That motion was denied on December 17, 1971.

All four of the original defendants in the criminal case were named defendants in the interpleader action along with Mr. Tarlow and the United States of America. Mr. Tarlow filed a verified answer for all but the United States. That answer alleged that the $6,424 seized on July 28, 1971 was the property of defendants Vermouth, Buker, Robinson and Weisner. It alleged those four made no claim to the funds as against Mr. Tarlow; they did claim as against the United States.

[2]In fact Mr. Dubin was the attorney who appeared for defendants at the trial on March 7.

Regardless of that, the judge who denied the motion for continuance was not required to assume a result favorable to Mr. Tarlow in the interpleader action.[3]

With perfect hindsight, we see that in the interpleader action a judgment was entered on September 24, 1973, adjudging Mr. Tarlow to be owner of the fund, but that fact could not have been foreseen at the time the motion for continuance was made.

Although the United States was not represented at the trial of the interpleader action on August 15, 1973, its recorded notices of lien were based upon taxes assessed against Vermouth and Buker; its answer set forth the nature of those claims. After answering, the United States, on May 18, 1973, served upon Vermouth and Buker and upon Mr. Tarlow, a notice of intention to take the deposition of each of them on June 14 at the federal courthouse in San Diego.[4] There is no reason to believe those depositions were not taken.

The obvious purpose of taking those depositions would be to determine to the satisfaction of the United States whether the assignment to Mr. Tarlow was made on the date it bore, and was absolute, final and was for a sufficient consideration. If the depositions satisfied the attorney for the United States that the assignment dated July 30, 1971, had those characteristics, then the United States had no reason to attend the trial.

At the same time testimony that would establish those facts could not cohere with any idea that the assignment to Mr. Tarlow made him a trustee of the fund for the use of the defendants in obtaining other counsel, or that the defendants had any further interest in the fund. The cases mentioned in footnote 3 indicate that Mr. Tarlow's right would be choate only if the full amount had been assigned as a retainer.

The denial of the motion for continuance on March 5, 1973, should not be held an abuse of discretion because sheriff's officers on July 28, 1971, had taken possession of money found in the premises where the arrest was made; nor should it be so held because the superior court had ordered that the holder of the money interplead the claimants to the fund,

---

[3]See *United States* v. *Clinton,* 260 F.Supp. 84, where an attorney's lien for fees was held to have been inchoate on the date of the filing of the lien of the United States on funds that had been seized by city police; and see *United States* v. *First National Bank of Memphis,* 458 F.2d 560, for a case holding an attorney had no priority because of an assignment for services rendered and to be rendered in a criminal case.

[4]The notices were served upon Vermouth and Buker at a residence which it may be assumed they shared.

one of which was the United States under its claim of lien filed August 12, 1971, long before any ruling had been sought from the superior court for recovery of the fund.

The trial court and the district attorney should not be held guilty of lèse majesté for doubting the mandate of this court conferred jurisdiction on the trial court to adjudicate the lien claims of the United States without reference to the governing federal statutes.

The United States, without its consent, given by the Congress, is not subject to suit (*Arizona* v. *California,* 298 U.S. 558 [80 L.Ed. 1331, 56 S.Ct. 848]; *People* v. *United States,* 307 F.2d 941; *Livermore* v. *Beal,* 18 Cal.App.2d 535, 545 [64 P.2d 987]); and its officers cannot waive its privilege in this respect (*Carr* v. *United States,* 98 U.S. (98 Otto.) 433 [25 L.Ed. 209]). Nor can a state pass a valid law for making the United States suable in its courts (*Carr* v. *United States, supra*).

The standing of a lien of the United States for taxes cannot be impaired by state action without the consent of Congress. (*United States* v. *New Britain,* 347 U.S. 81, 84 [98 L.Ed. 520, 525, 74 S.Ct. 367, 370].)

Even in the federal court system the court in a criminal proceeding is not the forum to determine the validity of a federal tax lien on money claimed by the criminal defendant. (*United States* v. *Rubio,* 404 F.2d 678, 681.)

Chapter 26, United States Code Annotated, section 6323, declares the persons against whom its tax lien is not valid.

Chapter 28, United States Code Annotated, section 2410 is the statute giving authority to name the United States as a party in a state court action to test the validity or priority of a lien claimed by the United States.

An inchoate lien which becomes certain as to amount only subsequent to the date federal liens attach cannot then be permitted to displace such federal liens. (*United States* v. *New Britain, supra,* 347 U.S. 81.)

Mr. Tarlow's activity on behalf of Vermouth and Buker and their co-defendants was in fact enormous. The reasonable value of those services, of which the trial court could and we can take judicial notice, was such that there would have been nothing left for other counsel by the time the motion for continuance was made even if the full amount had not been assigned in payment of a retainer.[5]

---

[5]Mr. Tarlow, whose office is in Hollywood or West Los Angeles, personally represented the four defendants in the preliminary hearing; in the superior court he presented and on different days argued motions for a release of the seized money and

The assertion of a denial of the right to counsel is a free card, often drawn and held for no other reason than the chance the bluff may win. The constitutional right itself is of such value and dignity that its use only as a pawn should be discouraged, when such use is obvious, as in the case at bench.

---

to dismiss the information, on behalf of all four defendants. Weisner prior thereto had replaced Mr. Tarlow with John McCabe, but Mr. Tarlow represented Mr. McCabe on the motion to dismiss. In preparation for the motions to dismiss, Vermouth, Robinson and Buker each made a statement that he/she waived any conflict of interest and stated his desire to have Barry Tarlow represent him/her. On behalf of Buker and Vermouth, Mr. Tarlow argued motions to sever trial of certain counts, and, on the same day, motions to obtain release of the seized funds and to obtain an evidentiary hearing to lay a foundation for the use of polygraph evidence in his motion to suppress made on a later date; there were also motions for continuance. In all Mr. Tarlow appeared in the San Diego County Superior Court on seven different days. He was represented by other counsel on 13 different other days before the motion for continuance of March 5. One of those counsel, Mr. Dubin, was present during the seven-day evidentiary hearing, followed on the seventh day by Mr. Tarlow's motion to suppress evidence, all of which occupied January 3, 4, 8, 9, 10, 11 and 15, 1973. The transcript of that hearing fills 798 typewritten pages. In preparation for that hearing, Vermouth and Buker each had two polygraph examinations, the purpose of which was to show the truthfulness of their answers that the police entered without prior announcement and that their presence at the door was unknown to defendants. Of the witnesses called by the defendants, five were polygraph examiners from Los Angeles or Orange Counties, and one a doctor of psychology from the University of Utah. Mr. Tarlow was present on January 15 when witnesses were sworn and examined as to the circumstances of the search and seizure, and argued the motion to suppress. There were written notices of motions and supporting papers, running to nearly 200 pages; and the petition for writ of mandate in this court, which was argued orally by counsel for Vermouth and Buker.